## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **MARIA RUSKIEWICZ, on behalf** | ) | |
| **of herself, and all others similarly** | ) | |
| **Situated,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION FILE NO.** |
| | ) | **5:23-cv-00303-D** |
| **OKLAHOMA CITY** | ) | |
| **UNIVERSITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## BRIEF IN SUPPORT OF DEFENDANT'S
## <u>MOTION TO DISMISS THE CLASS ACTION COMPLAINT</u>

Timothy B. Soefje
Oklahoma Bar No. 33342
Kai Hecker
Texas Bar No. 24028463
FREEMAN MATHIS & GARY, LLP
5851 Legacy Circle, 6th Floor
Plano, TX 75024
(469) 895-3005

David A. Cole*
Georgia Bar No. 142383
FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway, Suite 1600
Atlanta, GA 30339
(770) 818-0000
*Application for admission pro hac vice forthcoming

Teddy Abbot
Oklahoma Bar No. 14367
COOK & HILFIGER, P.C.
620 West Broadway
Muskogee, OK 74401

## **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................... 1

STATEMENT OF THE FACTS ................................................................................ 2

ARGUMENT AND CITATION OF AUTHORITY ................................................. 3

   A. **Plaintiff Lacks Article III Standing to Sue Because She
Has Not Alleged a Concrete and Particularized Injury-in-Fact** ...................... 3

     1. Plaintiff Must Plead Facts Demonstrating Her Standing for Each Claim ......... 3

     2. Plaintiff's Allegations of Potential Future Harm, Without Any
Actual Misuse of Her Information, Is Insufficient To Confer Standing............ 4

     3. Plaintiff's Other Attempts at Alleging Injury
Also Fail to Establish Standing........................................................................... 6

     4. Plaintiff Also Lacks Standing for Declaratory or Injunctive Relief ................ 11

   B. **Alternatively, Plaintiff's Complaint Fails to State a Claim
Upon Which Relief Can Be Granted Under Rule 12(b)(6)** ............................... 13

     1. Plaintiff Cannot Rely on Formulaic Conclusions, But Must
Instead Plead Facts Stating a Claim to Relief
That Is Plausible On Its Face ............................................................................. 13

     2. Plaintiff Fails to State a Claim For Negligence Because
She Has Not Suffered An Injury Proximately Caused by OCU ....................... 14

     3. Plaintiff Fails to State a Claim for Negligence *Per Se* Because
the FTC Act Does Not Provide a Duty of Care and
Plaintiff Still Fails to Allege Injury ................................................................. 15

     4. Plaintiff Fails to State a Claim for Breach of Express or
Implied Contract Because She Does Not Allege An Agreement
Between the Parties or Injury Caused by an Alleged Breach by OCU ............ 17

     5. Plaintiff Fails to State a Claim for Unjust Enrichment Because
She Does Not Show Facts Demonstrating Enrichment by OCU
and Injustice to Her ........................................................................................... 19

     6. Plaintiff Fails to State a Claim for Invasion of Privacy Because
OCU Did Not Disclosure or Publicize Her Information ................................... 21

7.   Plaintiff Fails to State a Claim Under the Oklahoma
     Consumer Protection Act .................................................................. 22

8.   Plaintiff is Not Entitled to Injunctive or Declaratory Relief ............................ 24

**CONCLUSION** ...................................................................................................... **25**

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                          <u>Page(s)</u>

*Alexander v. Smith & Nephew, P.L.C.*,
    98 F. Supp. 2d 1310 (N.D. Okla. 2000) ............................................................17

*Anderson v. Blake*,
    2005 WL 2716302 (W.D. Okla. Oct. 21, 2005)................................................21

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ......................................................................................2, 13

*Beck v. McDonald*,
    848 F.3d 262 (4th Cir. 2017) .............................................................................11

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 554 (2007) ...........................................................................................13

*Blood v. Labette County Medical Center*,
    2022 WL 11745549 (D. Kan. Oct. 20, 2022)...............................................6, 7, 10

*Chambliss v. CareFirst, Inc.*,
    189 F.Supp.3d 564 (D. Md. 2016).........................................................................7

*Cherny v. Emigrant Bank*,
    604 F. Supp. 2d 605 (S.D.N.Y. Mar. 12, 2009) ...................................................9

*City of Tulsa v. Bank of Oklahoma, N.A.*,
    280 P.3d 314 (Okla. 2011) .................................................................................20

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ....................................................................................*Passim*

*Commonwealth Property Advocates, LLC v.*
*Mortgage Electronic Registration Systems, Inc.*,
    680 F.3d 1194 (10th Cir. 2011) .........................................................................13

*Cooper v. Bonobos*, 21-CV-854 (JMF),
    2022 WL 170622 (S.D.N.Y. Jan. 19, 2022).........................................................9

*DaimlerChrysler Corp. v. Cuno*,
   547 U.S. 332, 341–42 (2006) ............................................................4

*Dep't of Sec ex rel. Faught v. Blair*,
   231 P.3d 645 (Okla. 2010) ..............................................................20

*Eddy v. Brown*,
   715 P.2d 74 (1986) ....................................................................21, 22

*Erikson v. BP Exploration & Production Inc.*,
   567 Fed.Appx. 637 (10th 2014) ......................................................18

*Fargo v. Hays-Kuehn*,
   352 P.3d 1223 (Okla. 2015) ............................................................14

*Gordon v. Virtumundo, Inc.*,
   2007 WL 1459395 (W.D. Wash. May 15, 2007) .............................9

*Griffey v. Magellan Health Incorporated*,
   562 F. Supp. 3d 34 (D. Ariz. 2021) ................................................15

*Hadnot v. Shaw*,
   826 P.2d 978 (Okla.1992) ...............................................................21

*Hall v. Bellmon*,
   935 F.2d 1106 (10th Cir. 1991) ......................................................13

*Hatton v. Combs*,
   793 Fed.Appx. 801 (10th Cir. 2019) ..........................................24, 25

*Howard v. Zimmer, Inc.*,
   299 P.3d 463 (Okla. 2013) ..........................................................15, 17

*I.C. v. Zynga, Inc.*,
   600 F. Supp. 3d 1034 (N.D. Cal 2022) .............................................9

*In re Practicefirst Data Breach Litig.*,
   2022 WL 354544 (W.D.N.Y. Feb. 2, 2022)..............................6, 7, 9

*In re SuperValu, Inc.*,
   870 F.3d 763 (8th Cir. 2017) ............................................................8

*Jackson v. Loews Hotels, Inc.*,
 2019 WL 6721637 (C.D. Cal. July 24, 2019) ...................................................9

*Kim v. McDonald's USA*,
 2022 WL 4482826 (N.D. Ill. Sept. 27, 2022) ...................................................9

*Legg v. Leaders Life Insurance Company*,
 574 F.Supp.3d 985 (2021) .............................................................................*Passim*

*Mansfield v. Circle K Corp.*,
 877 P.2d 1130 (Okla. 1994) ...........................................................................15

*MBA Commercial Const., Inc. v. Roy J. Hannaford Co., Inc.*,
 818 P.2d 469 (Okla. 1991) .............................................................................14

*McCormack v. Oklahoma Pub. Co.*,
 613 P.2d 737 (Okla. 1980) .............................................................................21

*Oltman Homes, Inc. v. Mirkes*,
 190 P.3d 1182 (Okla.Civ.App. 2008) .........................................................18, 19

*Pahlka v. Chicago, R.I. & P. Ry. Co.*,
 161 P. 544 (Okla. 1916) .................................................................................14

*Patterson v. Beall*,
 19 P.3d 839 (Okla. 2000) ...............................................................................23

*Pier Drillers, Inc. v. Freight Logistics, Inc.*,
 2021 WL 8446080 (W.D. Okla. Oct. 22, 2021) ............................................19

*Reece v. AES Corp.*,
 638 F. App'x 755, 776 (10th Cir. 2016) .......................................................14

*Reilly v. Ceridian Corp.*,
 664 F.3d 38 (3rd Cir. 2011) ........................................................................6, 8

*Robbins v. Oklahoma*,
 519 F.3d 1242 (10th Cir. 2008) .....................................................................14

*Smith v. Barker*,
 419 P.3d 327 (Okla. Civ. App. 2017) .........................................................16, 17

*Spokeo, Inc. v. Robins,*
    578 U.S. 330 (2016) ......................................................................4, 5

*TransUnion LLC v. Ramirez,*
    141 S.Ct. 2190 (2021) ...............................................................2, 4, 25

*Travis v. Assured Imaging LLC,*
    2021 WL 1862446 (D. Ariz. May 10, 2021) ...................................9

*Tsao v. Captiva MVP Restaurant Partners, LLC,*
    986 F.3d 1332 (11th Cir. 2021) ......................................................8

*Walls v. Am. Tobacco Co.,*
    11 P.3d 626, 630 (Okla. 2000) ......................................................24

*Wells v. Johnson & Johnson,*
    554 F.Supp.3d 1207 (W.D.Okla. 2021) .........................................20

*Williams-Diggins v. Mercy Health,*
    2018 WL 6387409 (N.D. Ohio Dec. 6, 2018) ................................11

## **Statutes**

15 Okla. Stat. § 132 ...............................................................................18

15 Okla. Stat. § 133 ...............................................................................18

15 Okla. Stat. § 753 ...............................................................................22

15 U.S.C.  § 45 .......................................................................................16

28 U.S.C. § 2201 .................................................................................24, 25

## **Rules**

Fed. R. Civ. P. 12 ..............................................................................*Passim*

**<u>INTRODUCTION</u>**

Plaintiff is a former student and graduate of the Oklahoma City University ("OCU") School of Law. Recently, OCU notified Plaintiff and other past and present students about a criminal cyberattack on its network that occurred in July 2022 and which OCU later discovered included the unauthorized acquisition of files containing some of their personal information. OCU notified Plaintiff and the other students that its investigation found no evidence of any misuse of their information to date.

Without any factual allegations of how OCU's security practices were insufficient, and without any allegations that her information has been misused or that she has suffered any harm, Plaintiff now accuses OCU of negligence and shotguns various theories of relief. However, Plaintiff conspicuously does not allege that she has been the victim of identity theft, that her personal information has been misused in any way, or that she has otherwise suffered actual harm because of the data breach. Instead, she merely claims to face a "heightened risk of identity theft and fraud" and that she has "suffered or [is] at increased risk of suffering" other potential harm.

However, this Court already rejected such claims and recently dismissed a similar putative class action data breach case under Rule 12(b)(1) for lack of standing. In *Legg v. Leaders Life Insurance Company*, 574 F.Supp.3d 985 (2021), the plaintiff, a customer of the defendant insurance company, asserted claims arising from a data breach. The plaintiff did not allege he had been the victim of identity theft, but only that he faced an "imminent, immediate, and continuing risk of harm from identity theft and fraud." *Id.* at 988. He also claimed the potential for identity theft made him feel "increased emotional distress and

anxiety" and required him to incur time and expense to protect himself. *Id.* This Court reviewed the relevant Supreme Court and Circuit Court decisions, including *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), and correctly held the plaintiff's allegations were insufficient to establish Article III standing because they merely alleged possible future injury and not concrete, particularized, and actual or imminent injury. *Id.* at 994.

Plaintiff's allegations in this case are nearly identical to those in *Legg*, and the Court should reach the same conclusion. Plaintiff does not allege any concrete, particularized, and actual or imminent injury, but merely a risk of future harm and time and expense allegedly associated with protecting herself. Therefore, she fails to establish Article III standing and her claims should be dismissed. Alternatively, even if Plaintiff does allege enough facts to confer standing, the Complaint still should be dismissed because each of Plaintiff's causes of action fail to state a claim upon which relief can be granted.

## STATEMENT OF THE FACTS[1]

OCU is a private, liberal arts and sciences university in Oklahoma City. (Compl. ¶ 21.) Plaintiff is a former student who attended OCU from 2009 to 2011, and in connection therewith provided OCU with certain personal information. (Compl. ¶¶ 14, 23, 32.)

In July 2022, OCU was the victim of a cyber-attack in which cybercriminals gained unauthorized access to its computer network and encrypted some of its data. (Compl. ¶ 36, Ex. 1.) OCU quickly initiated its incident response program, secured its network, and began

---

[1] For purposes of this motion, the allegations in the Complaint are accepted as true. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). However, by restating the allegations in the Complaint, Defendant does not admit the accuracy of the facts as stated.

a forensic investigation. (*Id.*) Through its investigation, OCU discovered that the cybercriminals copied certain files from its network that included personal information for some of its past or present students, including names and Social Security numbers, driver's license numbers, or other government ID numbers. (*Id.* at ¶ 37, Ex. 1.)

Upon discovering this, OCU worked diligently to provide written notification to all potentially affected individuals, including Plaintiff. (Compl. ¶ 35, Ex. 1.) This notice informed Plaintiff about the nature of the incident and the categories of information potentially impacted. (*Id.* at ¶¶ 35-40, Ex. 1.) In addition, OCU explained that its investigation found no evidence of any misuse of Plaintiff's information. (*Id.*) And indeed, Plaintiff does not allege that she has been the victim of identity theft or that her personal information has been misused to date. She also does not allege any facts how OCU's security measures were inadequate or failed to meet any alleged duty owed to her. Instead, Plaintiff merely alleges in conclusory fashion that OCU was negligent and that she now faces a "heightened risk of identity theft and fraud." (Compl. ¶ 73.) But as demonstrated herein, these allegations are wholly insufficient to establish standing or to state a claim upon which relief can be granted.

## ARGUMENT AND CITATION OF AUTHORITY

### A. Plaintiff Lacks Article III Standing to Sue Because She Has Not Alleged a Concrete and Particularized Injury-in-Fact

#### 1. Plaintiff Must Plead Facts Demonstrating Her Standing for Each Claim

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases

or controversies." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341–42 (2006). This limitation is based on Article III of the Constitution and requires that, for there to be a case or controversy capable of resolution, "the plaintiff must have a personal stake in the case— in other words, standing." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).

To meet this burden and establish standing, a plaintiff must show that (i) he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) the injury was likely caused by the defendant; and (iii) the injury would likely be redressed by judicial relief. *Id*. For an injury to be "concrete," it must be *de facto*, meaning that "it must actually exist" and cannot be merely hypothetical or conjectural. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016). Furthermore, a "concrete" injury must be "real and not abstract" because, under Article III, federal courts do not adjudicate hypothetical or abstract disputes. *Id*.

As the party invoking federal jurisdiction, Plaintiff bears the burden of demonstrating she has standing. *TransUnion*, 141 S.Ct. at 2207. This means Plaintiff must "clearly allege[] facts demonstrating each element [of standing]." *Spokeo*, 578 U.S. at 338. "Further, in a putative class action, the named representative must personally allege that he has standing to sue." *Legg*, 574 F.Supp.3d at 989. In addition, "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion*, 141 S. Ct. at 2208.

## 2. Plaintiff's Allegations of Potential Future Harm, Without Any Actual Misuse of Her Information, Is Insufficient To Confer Standing

Just like the plaintiff in *Legg*, Plaintiff seeks injunctive relief and damages based

not on any actual identity theft that has occurred, but instead merely on the risk that identity theft may occur in the future. But, as this Court previously held in *Legg*, and consistent with the Supreme Court's precedent in *Spokeo* and *TransUnion*, such risk of future harm is insufficient to establish standing. *Legg*, 574 F.Supp.3d at 995.

Plaintiff's Complaint is devoid of any allegations of actual misuse or attempted misuse of her information. This is consistent with the notice Plaintiff received from OCU, which told her it had no indication that her information had been misused. (Compl. ¶ 40, Ex. 1.) Thus, instead of pleading any real harm, Plaintiff merely alleges general information about increases in the numbers of data breaches and how personal information can be sold on the dark web. (*Id.* ¶¶ 44-48.) But those allegations are no more than the same allegations this Court already rejected in *Legg*, stating that such "reports do nothing to clarify the risks to the plaintiffs in this case." *Legg*, 574 F. Supp. 3d at 993.

Furthermore, Plaintiff's allegations of potential future harm are insufficient to demonstrate actual injury because identity theft will only occur *if* unknown third parties undertake a series of potential future acts, including the purchase or acquisition of data from the cybercriminals, followed by the identification of Plaintiff's information within the stolen data, followed by the actual use of Plaintiff's information in some way that results in harm to Plaintiff. Thus, just as this Court concluded in *Legg*, this sort of "speculation about the decisions of independent actors" is not sufficient to establish standing and requires dismissal of the Complaint. *Legg*, 574 F. Supp. 3d at 994.

This Court's decision in Legg is also consistent with numerous other district court decisions since *TransUnion* holding that the mere risk of future harm is insufficient to

confer standing. Accordingly, the Court should adhere to its precedent and dismiss the Complaint. *See, e.g., Blood v. Labette County Medical Center*, No. 5:22-cv-04036, 2022 WL 11745549 at *8 (D. Kan. Oct. 20, 2022) ("The Court has no concrete actions on which to base a conclusion that any threatened harm is 'certainly impending'"); *In re Practicefirst Data Breach Litig.*, No. 1:21-CV-00790(JLS/MJR), 2022 WL 354544, at *5 (W.D.N.Y. Feb. 2, 2022) (no standing because plaintiffs "cannot demonstrate a substantial or certainly impending risk of future identity theft, and because they cannot manufacture standing by incurring costs in anticipation of non-imminent harm"); *Reilly*, 664 F.3d at 42 ("Unless and until these conjectures come true, Appellants have not suffered any injury; there has been no misuse of the information, and thus, no harm.").

### 3. Plaintiff's Other Alleged Injuries Also Fail to Establish Standing

Perhaps nervous that her allegations of potential future harm are insufficient to confer standing, Plaintiff tries to bolster her Complaint by additionally alleging she has suffered harm in some other ways. In that regard, all of Plaintiff's allegations of harm or risk of harm are set forth in paragraph 72 of the Complaint and its subparts (a) through (k). OCU addresses each of these below and shows that none of them qualifies as a concrete injury for standing purposes.

**Misuse of Information.** Plaintiff first alleges she has suffered or is at risk of suffering "misuse of personal information." However, the Complaint does not contain any allegations of actual misuse of information. Thus, this is nothing more than a conclusory allegation of speculative future harm that is insufficient to confer standing for the reasons already discussed. *See, e.g., Legg*, 574 F.Supp.3d at 994; *Clapper*, 568 U.S. at 409.

**Lost opportunity to control information.** Plaintiff next alleges she has or is at risk of suffering a loss of opportunity to control how her personal information is used. However, Plaintiff does not allege she ever attempted, but was unable, to use her information in a desired way or that any specific harm has actually occurred because of it. Thus, the allegation amounts only speculative future harm that is insufficient to confer standing. *See, e.g., Legg*, 574 F.Supp.3d at 994; *Clapper*, 568 U.S. at 409.

**Diminution of value of information.** Plaintiff next alleges she has or is at risk of a diminution of value in her information. However, this Court already rejected this theory in *Legg*, stating, "[a]ssuming personal identifying information has a monetary value, Plaintiff fails to allege that he attempted to sell his personal information and was forced to accept a decreased price." *Legg*, 574 F.Supp.3d at 994. The same reasoning applies here because Plaintiff does not allege she tried to sell her information or otherwise experienced an actual loss of value in her information. *See also Blood*, 2022 WL 11745549 (no injury where plaintiffs did not allege they tried to sell their information and could not or were offered less than its value); *In re Practicefirst Data Breach Litig.*, 2022 WL 354544, at *5 (plaintiffs lacked injury based on diminution of value of personal information because they alleged no facts showing they tried to sell information and were forced to accept decreased price); *Chambliss v. CareFirst, Inc.*, 189 F.Supp.3d 564, 572 (D. Md. 2016) (rejecting standing based on theory of diminished value).

**Compromise, publication, or theft of information.** Plaintiff next alleges she has been harmed or is at risk of harm because of the compromise, publication, or theft of her information. However, this allegation is circular because it does not allege any harm, but

merely alleges what occurred to her information, i.e., her information was stolen by the cybercriminals. But without any accompanying facts demonstrating injury that has occurred because of this theft of her information, Plaintiff still fails to establish standing. *See, e.g., Legg*, 574 F.Supp.3d at 994; *Clapper*, 568 U.S. at 409.

**Costs associated with prevention, detection, and remediation.** Plaintiff next tries to manufacture standing by alleging she has incurred or may incur costs for the prevention, detection, and remedying of identity theft. However, the Supreme Court already rejected this theory and held that plaintiffs cannot "manufacture standing by incurring costs in anticipation of non-imminent harm." *Clapper*, 568 U.S. at 422. This Court thus held in *Legg*, "while it may have been reasonable to take some steps to mitigate the risks associated with the data breach, those actions cannot create a concrete injury where there is no imminent threat of harm." *Id.* at 994. *See also Tsao*, 986 F.3d at 1344-1345 ("Tsao cannot conjure standing here by inflicting injuries on himself to avoid an insubstantial, non-imminent risk of identity theft."); *In re SuperValu, Inc.*, 870 F.3d 763, 769 (8th Cir. 2017) ("the time [plaintiffs] spent protecting themselves against this speculative threat cannot create an injury"); *Reilly*, 664 F.3d at 46 ("Appellants' alleged time and money expenditures to monitor their financial information do not establish standing").

**Increased receipt of spam, calls, and texts.** Plaintiff next alleges she has or may suffer an increased receipt of spam, calls, and texts. However, Plaintiff does not allege she has actually experienced such an increase or even that her email address or phone number were among the information compromised. In addition, other courts have rejected unsolicited emails, text messages, robocalls, and other spam as forms of injury sufficient

to confer standing. *See, e.g., I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034 (N.D. Cal 2022); *Kim v. McDonald's USA*, No. 1:21-cv-05287, 2022 WL 4482826 (N.D. Ill. Sept. 27, 2022); *In re Practicefirst Data Breach Litig.*, 2022 WL 354544; *Cooper v. Bonobos*, 21-CV-854 (JMF), 2022 WL 170622 (S.D.N.Y. Jan. 19, 2022); *Travis v. Assured Imaging LLC*, No. CV-20-00390-TUC-JCH, 2021 WL 1862446 at *8-9  (D. Ariz. May 10, 2021) (allegations of dramatic increase in spam phone calls did not constitute injury); *Jackson v. Loews Hotels, Inc.*, No. 18-cv-827 (DMG), 2019 WL 6721637, at *4 (C.D. Cal. July 24, 2019) ("receiving spam or mass mail does not constitute an injury"); *Cherny v. Emigrant Bank*, 604 F. Supp. 2d 605, 609 (S.D.N.Y. Mar. 12, 2009) ("The receipt of spam by itself . . . does not constitute a specific injury entitling [plaintiff] to compensable relief"); *Gordon v. Virtumundo, Inc.*, No. 06-0204-JCC, 2007 WL 1459395 at *8 (W.D. Wash. May 15, 2007) (harm suffered "must rise beyond the level typically experienced by consumers - *i.e.*, beyond the annoyance of spam.").

**Lost opportunity costs.** Plaintiff next alleges she has or will experience lost opportunity costs associated with the time and effort of protecting her identity. However, she does not allege any facts demonstrating she has incurred an actual lost opportunity cost of any kind. Thus, she merely describes a potential harm she may incur, but does not show a real, concrete injury that has, in fact, occurred. And, even if she did, this allegation still fails to establish standing because it is no different than the costs associated with alleged time and effort to protect against potential future harm. As already established above, such allegations are merely improper attempts to manufacture standing. *Legg,* 574 F.Supp.3d at 994; *Clapper*, 568 U.S. at 416.

**Delay in receipt of tax refunds.** Plaintiff next alleges she has or may be harmed by a delay in receipt of her tax refund. However, the Complaint contains no allegations that Plaintiff was entitled to a refund, that it was delayed, that the delay was traceable to or caused by event at OCU, or that the delay actually caused Plaintiff harm. Thus, this allegation merely describes a theoretical harm that might occur if certain things happen in the future, but fails to allege a real injury capable of being redressed in this case. *See, e.g., Blood*, 2022 WL 11745549 (no injury where plaintiff failed to specify length of delay in tax return, problem with return, or how difficult it was to rectify).

**Unauthorized use of information.** Plaintiff next alleges she has or may be harmed by the unauthorized use of her stolen information. However, the Complaint does not provide any allegations of actual misuse. To the contrary, the only allegations are that OCU affirmed to Plaintiff that its investigation found no evidence of misuse. (Compl. at Ex. 1.) Thus, this allegation does not establish standing because it merely describes speculative future harm that has not actually occurred. *See, e.g., Legg*, 574 F.Supp.3d at 994.

**Continued risk to information in possession of OCU.** Plaintiff also alleges there is "continued risk" to her personal information in possession of OCU that may be "subject to further breaches" in the future. However, Plaintiff alleges no facts demonstrating that OCU has failed to secure her information or that it is at continued risk. To the contrary, the notice letter issued to Plaintiff affirms that OCU's response included "fully securing our network and the data that we maintain." (Compl. at Ex. 1.) In addition, these allegations do not show a real injury Plaintiff has experienced, but merely speculate about potential future harm that may occur *if* certain events happen, including *if* her information remains at risk

10

and *if* OCU experiences another cyber-attack. Such hypothetical allegations are insufficient to confer standing. *See, e.g., Legg*, 574 F.Supp.3d at 994; *Clapper*, 568 U.S. at 409.

**Current and future costs related to time and effort spent protecting herself from potential future harm.** Plaintiff's final allegation is that she has or may incur costs to protect herself from potential harm. However, this allegation does not add anything new and is merely a rehash of the same allegations already discussed above regarding alleged efforts to protect herself from speculative, future harm. The Complaint contains no allegations of actual costs incurred by Plaintiff and, even if it did, Plaintiff cannot manufacture standing. *Legg,* 574 F.Supp.3d at 994; *Clapper*, 568 U.S. at 416.

### 4.  Plaintiff Also Lacks Standing for Declaratory or Injunctive Relief

In addition to her claims for damages, Plaintiff seeks "injunctive or declaratory relief" in the Complaint, although she does not state a separate cause of action. To the extent Plaintiff may argue she has standing based on any alleged right to such injunctive or declaratory relief, she is wrong. *Legg*, 574 F. Supp. 3d at 989 (plaintiffs must demonstrate standing for each claim they assert each form of relief they seek).

Courts have consistently rejected the argument that a plaintiff automatically has standing for declaratory or injunctive relief over potential future data security incidents, merely because the defendant suffered one previously. As the Fourth Circuit stated, "The most that can be reasonably inferred from the Plaintiffs' allegations regarding the likelihood of another data breach at Dorn VAMC is that the Plaintiffs *could* be victimized by a future data breach. That alone is not enough." *Beck v. McDonald*, 848 F.3d 262, 278 (4th Cir. 2017) (emphasis in original). *See also Williams-Diggins v. Mercy Health*, 2018

11

WL 6387409, at *1-2 (N.D. Ohio Dec. 6, 2018) (rejecting standing based on plaintiff's allegation that "[i]t is just a matter of time until a hacker discovers Mercy's vulnerable system and further exposes patients' private medical information").

Rather, to establish standing to seek forward-looking, injunctive relief to prevent harm from occurring, Plaintiff must plead facts demonstrating that the risk of harm is "imminent and substantial," meaning that it is "certainly impending." *Legg*, 574 F.Supp.3d at 993 (quoting *Clapper*, 568 U.S. at 409). This standard is not met when plaintiffs do not allege actual misuse of their information, but instead rely on mere generalities about the risks of data breaches in general and the potential that a defendant may be victimized again. *Id.* at 994 ("A future risk of injury that relies on this sort of 'speculation about the decisions of independent actors' is not sufficient") (*quoting Clapper*, 568 U.S. at 410).

Just like the plaintiffs in *Legg*, Plaintiff has not alleged any misuse of her information or any facts demonstrating "certainly impending" risk to her data that still may be held by OCU. Rather, Plaintiff relies only on generalities about the risks of data breaches and then asserts she is "at increased risk of suffering" potential harm in the future. In addition, Plaintiff has not alleged any facts demonstrating that OCU has failed to secure her information or that her information is at continued risk. To the contrary, the notice letter issued to Plaintiff affirms that OCU has "fully secur[ed] our network and the data that we maintain." (Compl. at Ex. 1.) Thus, merely because OCU *could* be subject to a cyber-attack in the future, does not establish "certainly impending" risk that gives Plaintiff standing to purse a claim for injunctive relief.

**B.  <u>Alternatively, Plaintiff's Complaint Fails to State a Claim Upon Which Relief Can Be Granted Under Rule 12(b)(6)</u>**

Even if the Court determines that Plaintiff has standing, each of Plaintiff's claims also fails to state a claim upon which relief can be granted under Rule 12(b)(6). For these additional reasons, Plaintiff's Complaint should be dismissed.[2]

**1.  Plaintiff Cannot Rely on Formulaic Conclusions, But Must Instead Plead Facts Stating a Claim to Relief That Is Plausible On Its Face**

Although the Court is required to accept well-pleaded facts as true when evaluating a motion to dismiss under Rule 12(b)(6), it is not required to accept the plaintiff's legal conclusions. *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678. Thus, a complaint that merely "offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient to state a claim. *Iqbal*, 556 U.S. at 678. Likewise, "conclusory allegations without supporting factual averments" are not enough and still warrant dismissal. *Hall v. Bellmon*, 935 F.2d 1106, 1109-10 (10th Cir. 1991).

In addition, the facts alleged must be enough "to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 570. This means the allegations must show more than the mere possibility that the defendant might have acted unlawfully, and instead demonstrate it is plausible. *Id.*; *Iqbal*, 556 U.S. at 678. As the Tenth Circuit has explained, "plausibility" in this context "must refer to the scope of the allegations in a

---

[2] In reviewing a motion to dismiss, the court can consider "not only the complaint, but also the attached exhibits and documents incorporated into the complaint by reference." *Commonwealth Property Advocates, LLC v. Mortgage Electronic Registration Systems, Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011).

complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

### 2. Plaintiff Fails to State a Claim For Negligence Because She Has Not Suffered An Injury Proximately Caused by OCU

Under Oklahoma law, "[t]he three necessary elements to a finding of negligence are (1) a duty owed by the defendant to protect plaintiff from injury (2) failure to fulfill that duty and (3) injuries to plaintiff proximately caused by defendant's failure to meet the duty." *Fargo v. Hays-Kuehn*, 352 P.3d 1223, 1227 (Okla. 2015). Without OCU waiving its rights to any defenses, including defenses based on the absence of duty owed to Plaintiff and the absence of any breach by OCU, Plaintiff's cause of action for negligence in Count I of the Complaint fails to state a claim because Plaintiff does not plead any injury proximately caused by OCU.

"It is elemental in the law of damages that negligence, unaccompanied by injurious result, does not give rise to liability." *Pahlka v. Chicago, R.I. & P. Ry. Co.*, 161 P. 544, 552 (Okla. 1916). Thus, "for a litigant to maintain a negligence action to a successful conclusion, the litigant must allege injury or damages that are certain and not speculative." *MBA Commercial Const., Inc. v. Roy J. Hannaford Co., Inc.*, 818 P.2d 469, 474 (Okla. 1991). Accordingly, any claim of negligence (including negligence per se) requires specific allegations demonstrating that the defendant's actions caused an injury to the plaintiff. *Reece v. AES Corp.*, 638 F. App'x 755, 776 (10th Cir. 2016). Merely alleging reasonable concern about an injury potentially occurring in the future is not sufficient. *Id.*

14

Here, Plaintiff fails to state a claim for negligence because she has not alleged any facts demonstrating an actual injury proximately caused by OCU. Plaintiff does not allege she has been the victim of identity theft. She does not allege that her information has been misused. She does not even allege that anyone has *tried* unsuccessfully to misuse her information. Instead, her allegations amount to nothing more than speculation about potential future harm that *might* occur if certain things happen. But Oklahoma law is clear that, for a negligence claim to accrue, the injury must have already occurred and cannot be based on a risk of potential future harm. Therefore, Plaintiff fails to state a claim for negligence and Count I should be dismissed. *See also Griffey v. Magellan Health Incorporated*, 562 F.Supp.3d 34 (D. Ariz. 2021).

### 3. Plaintiff Fails to State a Claim for Negligence *Per Se* Because the FTC Act Does Not Provide a Duty of Care and Plaintiff Still Fails to Allege Injury

Plaintiff also fails to state a claim for negligence *per se* in Count II of the Complaint. In that regard, the negligence *per se* doctrine is not a separate cause of action, but merely a framework used to substitute statutory standards in place of common law duties of care. *Howard v. Zimmer, Inc.*, 299 P.3d 463, 467 (Okla. 2013). In other words, where a statute defines the defendant's obligations, a court may adopt the statutorily required conduct in place of the common-law duty as the appropriate basis for determining . . . negligence." *Mansfield v. Circle K Corp.*, 877 P.2d 1130, 1132 (Okla. 1994).

But merely asserting the violation of a statute is not enough to state a claim. While regulations and administrative rules that "are binding expressions of lawmaking powers" can support a claim for negligence *per se*, *Howard*, 299 P.3d at 468, Oklahoma courts still

require that "the standard of duty must be fixed and defined by law and be the same in all circumstances." *Smith v. Barker*, 419 P.3d 327, 333 (Okla. Civ. App. 2017). As a result, a negligence *per se* claim does not exist where "the terms of the statute do not impose positive objective standards." *Id.*

In this case, Plaintiff fails to state a claim for negligence *per se* because her claim is premised on Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, which does not impose fixed, defined, and objective standards. Section 5 of the FTC Act prohibits companies from "unfair methods of competition" and "unfair or deceptive acts or practices" but does not delineate requirements for data security, nor does Plaintiff even try to allege it does. Instead, Plaintiff merely points to a 2016 publication by the FTC recommending generalized best practices, such as "protect the personal information they keep" and "understand their network's vulnerabilities." (Compl. ¶¶ 54-55.) Yet that document merely describes these as "principles" that will "go a long way toward helping you keep data secure," not as mandated statutory procedures that must be followed. *See* Protecting Personal Information: A Guide for Business, at p. 2 (October 2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (visited June 6, 2023).

These salutary precepts about strong passwords and use of firewalls hardly rise to the level of affirmative obligations that Oklahoma courts require to determine that a statutory scheme creates a duty of care sufficient to form the basis of a claim for negligence *per se*. Thus, the generality of Section 5 of the FTC Act does not define a standard of conduct sufficiently specific to satisfy the requirements of a claim for negligence *per se*,

and Plaintiffs' lack of citation to any statute, regulation, or other "official expression of lawmaking power" which prohibits specific conduct, is fatal to her claim. *See also Smith*, 419 P.3d at 333 (rejecting negligence *per se* where statutory duties imposed on operator of vehicle were "undefined or defined only in abstract general terms"); *Alexander v. Smith & Nephew, P.L.C.*, 98 F. Supp. 2d 1310, 1321 (N.D. Okla. 2000) (no basis for negligence *per se* based on requirements that were administrative and did not impose standard of care).

Alternatively, even if the FTC Act is a proper basis of legal duty owed by OCU to Plaintiff, and even assuming for the sake of argument that Plaintiff alleges sufficient facts to show a breach of such duty, her claim of negligence *per se* still fails for the same reason as her common law negligence claim: Plaintiff still does not allege an actual injury that has occurred because of the alleged breach. The existence of injury is still a required element to accrue a cause of action for negligence *per se*, *Howard*, 299 P.3d at 467, and Plaintiff's failure to allege any such injury remains fatal to her claim even if the FTC Act is a valid source of duty. All of OCU's arguments above regarding Plaintiff's common law negligence claim thus apply with equal force and are incorporated herein.

### 4. Plaintiff Fails to State a Claim for Breach of Express or Implied Contract Because She Does Not Allege An Agreement Between the Parties or Injury Caused by an Alleged Breach by OCU

Plaintiff next tries to allege in Count III of the Complaint that she entered into an express or implied contract with OCU regarding the handling of her personal information, and that OCU breached this agreement by not safeguarding her information from the cybercriminals that committed the attack. However, Plaintiff's allegations and the facts of this case do not permit any such claim for relief.

"A breach of contract suit requires three elements be proven: formation of a contract; a breach of that contract; and actual damages suffered from that breach." *Oltman Homes, Inc. v. Mirkes*, 190 P.3d 1182, 1185 (Okla. Civ. App. 2008). Under *Iqbal's* plausibility standard, Plaintiff is thus required to plead facts that create a plausible inference that there was a contract between her and OCU, express or implied, and that OCU breached that contract. *Erikson v. BP Exploration & Production Inc.*, 567 Fed. Appx. 637, 639 (10th Cir. 2014). For a claim of express contract, the terms of the contract must be "stated in words." *Id.* (citing OKLA. STAT. tit. 15 § 132). For an implied contract, the existence and terms of the contract must be "manifested by conduct." *Id.* (citing OKLA. STAT. tit. 15 § 133). In both instances, the contract must be founded on the mutual agreement of the parties. *Id.*

Here, Plaintiff does not plead any facts demonstrating the existence of an express or implied contract between her and OCU to safeguard her information from cybercriminals or otherwise. Plaintiff does not identify any express contract between her and OCU containing such terms, nor does she identify any conduct between them in their course of dealing that manifested a mutual agreement to undertake any obligations like this. Instead, Plaintiff tries to fashion an agreement out of one page of an alleged OCU Confidentiality and Privacy Policy where OCU says it "makes every effort to abide by all applicable [laws]," and advises OCU employees that "[i]t is important to handle all confidential information with discretion" and only disclose it to "others who have a need to know for legitimate business reasons." (Compl. ¶¶ 26-27, 117.)

However, this document does not in any way reflect a contract between Plaintiff and

OCU, but is merely a document to OCU employees regarding their handling of information during employment. *See* Confidentiality and Privacy, https://cdn2.assets-servd.host/oklahomacity-university/production/financial-aid/docs/Confidentiality-and-Privacy-Policy-Oath.pdf (accessed June 6, 2023). Further, even if construed as a contract between Plaintiff and OCU, the document does not undertake any specific data security obligations in exchange for Plaintiff's payment of tuition or provision of her personal information, nor does Plaintiff allege any facts identifying specific provisions in the document that OCU breached. *See also Pier Drillers, Inc. v. Freight Logistics, Inc.*, No. CIV-21-115-SLP, 2021 WL 8446080 (W.D. Okla. Oct. 22, 2021) (dismissing claim where plaintiff made no allegations how parties' conduct manifested alleged contract term).

Additionally, even if the Privacy Policy is construed as an express or implied contract, and even if Plaintiff were to allege sufficient facts demonstrating OCU's breach, she still fails to state a claim because she does not allege any injury that has occurred because of the breach. *Oltman Homes*, 190 P.3d at 1185 (actual damages suffered from the breach is necessary element of claim for breach of contract). In that regard, all of OCU's prior arguments regarding Plaintiff's failure to establish standing and failure to allege injury in support of her negligence claims apply here with equal force and are incorporated by reference. For all these reasons, Count III of the Complaint should be dismissed.

## 5. Plaintiff Fails to State a Claim for Unjust Enrichment Because She Does Not Show Facts Demonstrating Enrichment by OCU and Injustice to Her

Plaintiff next tries to allege a claim for unjust enrichment as an alternative to her claim for breach of express or implied contract. (Compl. ¶ 131.) However, Plaintiff fails to

state such a claim because she does not plead facts demonstrating enrichment by OCU or a resulting injustice to her.

The elements of a claim for unjust enrichment are "(1) the unjust (2) retention of (3) a benefit received (4) at the expense of another." *Wells v. Johnson & Johnson*, 554 F.Supp.3d 1207, 1215 (W.D. Okla. 2021) (citing *Dep't of Sec ex rel. Faught v. Blair*, 231 P.3d 645, 658 (Okla. 2010). Thus, to state a claim for unjust enrichment, Plaintiff must plead facts demonstrating "enrichment to another, coupled with a resulting injustice" to herself. *Id.* at 1215. *See also City of Tulsa v. Bank of Oklahoma, N.A.*, 280 P.3d 314, 319 (Okla. 2011) (before party can be entitled to recover for unjust enrichment, "there must be enrichment to another, coupled with a resulting injustice").

To try to allege such a claim, Plaintiff contorts the relationship between a student to her school. She alleges that OCU benefited from the receipt of her personal information and that Defendant should not be permitted to retain the monetary value of tuition because OCU failed to implement allegedly expected practices to safeguard that information. (Compl. ¶¶ 133-135.) However, this utterly fails to state a plausible claim for unjust enrichment.

Plaintiff's allegations in no way show an agreed upon exchange of Plaintiff's information for value to OCU such that it was enriched at her expense. The relationship between the parties is that Plaintiff is a former student who paid tuition in exchange for an education and the degree conferred upon her. (Compl. ¶ 14.) That is what Plaintiff paid for and that is what she received; any provision of her personal information to OCU was merely to facilitate her enrollment as a student and was not a *quid pro quo* for value.

Plaintiff alleges no facts that OCU profited from its receipt of Plaintiff's information and, even if she did, she has not alleged facts demonstrating, among other things, the value of such information. Accordingly, Plaintiff's claim for unjust enrichment in Count IV should be dismissed as well.

### 6. Plaintiff Fails to State a Claim for Invasion of Privacy Because OCU Did Not Disclosure or Publicize Her Information

In Count V of the Complaint, Plaintiff asserts a claim for invasion of privacy and, specifically, for public disclosure of private facts. (Compl. ¶ 141.) This claim fails as a matter of law because Plaintiff does not plausibly allege that OCU disclosed private facts about her or that any such disclosure constituted the "publicity" required for such a claim.

To recover for invasion of privacy by publication of private facts, the plaintiff must demonstrate that the defendant made a publication that: (1) would be highly offensive to a reasonable person, (2) contained private facts about the plaintiff, (3) constituted a "public disclosure" of those private facts, and (4) was not of legitimate concern to others. *Anderson v. Blake*, No. CIV-05-0729-HE, 2005 WL 2716302, at *5 (W.D. Okla. Oct. 21, 2005) (citing *Hadnot v. Shaw*, 826 P.2d 978, 986 (Okla.1992) and *McCormack v. Okla. Publishing Co.*, 613 P.2d 737, 740 (Okla.1980)). In addition, the requirement of "publicity" or "publication" for purposes of this claim means that the defendant must have conveyed the private facts about the plaintiff "to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge[.]" *Eddy v. Brown*, 715 P.2d 74, 78 (1986).

In this case, the Complaint does not plausibly demonstrate such conduct by OCU.

First, OCU did not publicize Plaintiff's information at all. Rather, as Plaintiff alleges, cybercriminals broke into OCU's computer network and *stole* her information without OCU's knowledge or involvement. Although Plaintiff may try to allege that OCU was negligent or otherwise breached duties to safeguard her information from such threats, there are no facts to plausibly suggest that OCU took any affirmative act to publicize Plaintiff's information or intentionally disclose it to the cybercriminals.

Second, even if OCU's alleged failure to safeguard Plaintiff's information from cybercriminals is deemed the equivalent of publication, there remain no facts plausibly showing that such publication was made by OCU "to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge[.]" *Eddy*, 715 P.2d at 78. To the contrary, the Complaint only alleges that the information was acquired by the cybercriminals who perpetrated the attack on OCU. There are no allegations of her information being publicized anywhere to "the public at large" or to such a degree that it is "substantially certain to become one of public knowledge." Accordingly, Plaintiff's claim in Count V of the Complaint should be dismissed.

**7. Plaintiff Fails to State a Claim Under the Oklahoma Consumer Protection Act**

In Count VI, Plaintiff tries to allege a claim under the Oklahoma Consumer Protection Act ("OCPA"), 15 Okl. St. § 753 *et seq.*, based on OCU's notice given to Plaintiff about the data breach and alleged "false or misleading representations" therein. (Compl. ¶¶ 143-150.)  However, Plaintiff fails to sufficiently allege the elements of such a claim, including injury because of such alleged conduct.

The four elements of a consumer's private action under the OCPA are: (1) the

defendant engaged in an unlawful practice defined by the statute; (2) the unlawful practice occurred in the course of defendant's business; (3) the plaintiff, as a consumer, suffered an injury-in-fact; and (4) the unlawful practice caused the plaintiff's injury. *Patterson v. Beall*, 19 P.3d 839, 846 (Okla. 2000). Here, Plaintiff fails to plead facts demonstrating these elements that OCU violated the OCPA or that Plaintiff suffered an injury-in-fact.

Notably, Plaintiff's claim under the OCPA is premised on the notice OCU gave to her about the data breach, not on the breach itself or any alleged failure to OCU to safeguard her information. (Compl. ¶¶ 143-150.)[3] In that regard, while Plaintiff conclusorily alleges that OCU "used unfair trade practices in representing the nature of the Data Breach" and made "false or misleading representations to Plaintiff," (Compl. ¶¶ 146-47), she does not allege any *facts* explaining *what* statements were false or *how* they were false. Plaintiff's allegations about OCU's notice are set forth in ¶¶ 35-43 of the Complaint and say nothing about the representations being false or misleading. No other allegations in the Complaint state facts plausibly demonstrating that any statement by OCU was false or misleading. Thus, Plaintiff fails to meet her burden of pleading a claim under *Iqbal* and *Twombly* because she cannot merely rely on "labels or conclusions" or a "formulaic recitation of the elements" to state her claim.

---

[3] Although Plaintiff alleges the OCPA "parallels the FTC Act" and that, as a result, OCU's alleged violations of the data security requirements of the FTC should also constitute a violation of OCPA, there is no legal authority in support of this and Plaintiff cannot bootstrap a federal statute into her state law statutory cause of action. In addition, as already discussed above, the FTC Act does not establish any objective, definitive data security standards at all. Therefore, it cannot provide the basis of any claim for alleged violation of the OCPA based on allegedly inadequate security.

Additionally, Plaintiff's claim under the OCPA fails because she does not plead any facts demonstrating injury-in-fact caused by an alleged violation by OCU. Oklahoma courts have held that actual monetary damages, i.e., actual injury, is an essential element of the private right of action under the OCPA. *Tibbetts v. Sight 'n Sound Appliance Centers, Inc.*, 77 P.3d 1042, 1051, as corrected (Okla. Sept. 30, 2003). In addition, the Oklahoma Supreme Court has specifically held that a plaintiff cannot recover for a mere violation of the OCPA, but "must suffer some detriment or loss as a result of a violation of the OCPA." *Walls v. Am. Tobacco Co.*, 11 P.3d 626, 630 (Okla. 2000).

Here, Plaintiff's claim under the OCPA is premised on the notice she received about the data breach from OCU, yet all of Plaintiff's allegations of harm relate solely to the alleged data breach itself and the compromise to her information. (*See* Compl. ¶¶ 72-76.) Plaintiff does not allege any injury because of an allegedly false statement by OCU in its notice of the data breach or otherwise. In addition, to any extent Plaintiff's claim under the OCPA is premised on alleged inadequate security, Plaintiff has failed to allege any actual injury for the reasons already discussed herein with respect to Article III standing and Plaintiff's failure to establish her other tort claims. Therefore, Plaintiff fails state a claim under the OCPA and Count VI should be dismissed.

### 8. Plaintiff is Not Entitled to Injunctive or Declaratory Relief

Under the Declaratory Judgment Act, a district court "*may* declare the rights and other legal relations of [an] interested party seeking [declaratory relief]." *Hatton v. Combs*, 793 Fed. Appx. 801, 804 (10th Cir. 2019) (citing 28 U.S.C. § 2201(a) (emphasis added). The five factors that district courts consider in deciding whether to exercise their discretion

to hear and decide claims for declaratory judgment are:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race to *res judicata*; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*Id.* There is no requirement that a court consider all the factors and no single factor is determinative. *Hatton*, 793 Fed. Appx. at 805.

The first two factors are determinative in this case. Here, Plaintiff makes no specific request for declaratory or injunctive relief. Critically, as explained in detail above, Plaintiff has not suffered actual injury because of the data breach. In addition, any injunctive or declaratory relief would not affect the data breach that has already occurred. In *TransUnion*, the Supreme Court recognized that "a person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." *Id.* 141 S. Ct. at 2210. As explained previously, Plaintiff has not identified any "imminent and substantial" risk of harm and there is otherwise no appropriate injunctive relief regarding a data breach that has already occurred. Accordingly, Plaintiff is not entitled to declaratory or injunctive relief, and any such claims should be dismissed as well.

## CONCLUSION

For the reasons stated herein, OCU respectfully requests that the Court grant this motion, dismiss Plaintiff's Complaint in its entirety with prejudice, and grant OCU such other and further relief that the Court deems necessary and proper.

25

Respectfully submitted his 7th day of June, 2023.

Timothy B. Soefje
Oklahoma Bar No. 33342
Kai Hecker
Texas Bar No. 24028463
FREEMAN MATHIS & GARY, LLP
5851 Legacy Circle, 6th Floor
Plano, TX 75024
(469) 895-3005

David A. Cole
Georgia Bar No. 142383
FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway, Suite 1600
Atlanta, GA 30339
(770) 818-0000
*Admission pro hac vice pending*

Teddy Abbot
Oklahoma Bar No. 14367
COOK & HILFIGER, P.C.
620 West Broadway
Muskogee, OK 74401
teddy@cookhilfiger.com

*Attorneys for the Defendant*
*Oklahoma City University*

## CERTIFICATE OF SERVICE

I certify that I have this day submitted the foregoing **BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE CLASS ACTION COMPLAINT** to the Clerk of Court using the CM/ECF system which will automatically send electronic mail notification of such filing to the following counsel of record who are CM/ECF participants:

Jason B. Aamodt
Matthew D. Alison
INDIAN & ENVIRONMENTAL LAW GROUP, PLLC
406 South Boulder Ave., Suite 830
Tulsa, Oklahoma 74103
jason@iaelaw.com
matthew@iaelaw.com

Lynn A. Toops
Amina A. Thomas
COVEN & MALAD LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
ltoops@cohenmalad.com
athomas@cohenmalad.com

J. Gerard Stranch, IV
Andrew E. Mize
STRANCH, JENNINGS & GARVEY, PLLC
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
gerards@bsjfirm.corn
andrewm@bsjfirm.corn

Samuel Strauss
Raina Borelli
TURKS & STRAUSS, LLP
613 Williamson Street Suite 201
Madison, WI 53703
sam@turkestrauss.com
raina@turkestrauss.com

This 7th day of June, 2023.

Timothy B. Soefje
Oklahoma Bar No. 33342
Kai Hecker
Texas Bar No. 24028463
FREEMAN MATHIS & GARY, LLP
5851 Legacy Circle, 6th Floor
Plano, TX 75024